## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  CR 18-3413 KG/CG

JADE TIFFANY LAUREZO,

    Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendant Jade Tiffany Laurezo's *Motion to Suppress Evidence*, (Doc. 26), filed November 27, 2018 and the *United States' Response to Defendant's Motion to Suppress Evidence*, (Doc. 33), filed December 18, 2018. On December 19, 2018, United States District Judge Kenneth J. Gonzales referred this matter to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 35). On February 12 and 13, 2019, the Court held an evidentiary hearing. (Doc. 38). Following the hearing, both Ms. Laurezo and the Government submitted proposed findings of fact and conclusions of law. (Doc. 55); (Doc. 57).

After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that Ms. Laurezo's *Motion to Suppress Evidence*, (Doc. 26), be **DENIED**.

### I. Factual Background

On March 27, 2018 the National Center for Missing and Exploited Children received a CyberTipline Report of three uploaded files of child pornography, linked to email address dayton66xx@gmail.com. (Doc. 33-1 at 8). On May 16, 2018 and May 29,

2018, Special Agent Owen Pena with the Office of the Attorney General of the New Mexico Investigation Division downloaded the sexually explicit materials from IP address 199.83.119.146. (Doc. 33-1 at 9-11). On June 1, 2018, Special Agent Pena obtained a Grand Jury Subpoena Duces Tecum to collect the subscriber information – including the subscriber's name, telephone number, address, and email address – associated with IP address 199.83.119.146. (Doc. 33-1 at 12).

On June 18, 2018, Special Agent Pena received the requested subscriber information, listing an individual named Dain Adams as the registered owner of the IP address and linking the account's service address to 3809 Zinnia Road, Roswell, New Mexico. *Id.* On June 20, 2018, the case was transferred to Detective Raul L. Valderaz with the Criminal Investigation Division of the Chaves County Sheriff's Office. (Doc. 33-1 at 8). After reviewing the file, Detective Valderaz travelled to 3809 Zinnia Road and obtained a description of the residence. (Doc. 33-1 at 12). Parked in front of the property, Detective Valderaz observed a 2007 Toyota Pickup truck and requested the Pecos Valley Regional Communication Center run an inquiry on the vehicle, which verifyied that Dain Adams was the registered owner. *Id.*

On June 26, 2018, Detective Valderaz applied for and was granted a search warrant for 3809 Zinnia Road. (Doc. 26 at 12); (Doc. 33-1). The warrant authorized law enforcement officers to search for:

> All electronic data processing and storage devices, computers and computer systems including central processing units; internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, memory cards, USB thumb drives, optical storage devices or other memory storage devices; peripheral input/output devices such as keyboards, cameras, printers, video display monitors, optical

> readers and related communication devices such as
> modems; together with system documentation operating logs
> and documentation, software and instruction manuals,
> handwritten notes, logs, user names and lists.

(Doc. 33-1 at 7). The warrant also allowed officers to search for all images, videos, photographs, books, magazines, and documents, which may contain any unclothed or partially unclothed children under the age of eighteen, or children under the age of eighteen engaged in sexual conduct. *Id.* Finally, the warrant encompassed the search of all documents tending to show occupancy or ownership of the residence, and photographs of the interior and exterior of the residence. *Id.*

The following day, June 27, 2018, Detective Valderaz executed the search warrant. *Id.* Inside the 3809 Zinnia Road residence, Detective Valderaz encountered Defendant Jade Tiffany Laurezo, later identified as Dain Adams' girlfriend, Donnie Roberson, and Marsha Roberson. (Doc. 55 at 6 ¶ 36). Detective Valderaz confirmed that Dain Adams lived at the address and proceeded to seize multiple electronic devices, including a Samsung DUOS cellphone. (Doc. 26 at 12). At the time Detective Valderaz seized the Samsung DUOS cellphone from the residence, he did not know who owned the cellphone, and he did not inquire as to the ownership of any of the electronic devices seized. (Doc. 55 at 5 ¶¶ 24-25). While executing the search warrant, Detective Valderaz did not seize the residence's internet modem. (Doc. 55 at 5 ¶ 28).

That afternoon, Detective Valderaz applied for and was granted several follow-up warrants to search each of the electronic items seized from the residence, including the Samsung DUOS cellphone. (Doc. 26 at 12). In his follow-up search warrants, Detective Valderaz submitted the same affidavit that he drafted in support of the search warrant for the 3809 Zinnia Road residence, adding only that he had executed the search

warrant, confirmed that Dain Adams lived at the residence, and he had seized multiple electronic devices from the home. (Doc. 55 at 6 ¶ 31). In his affidavit, Detective Valderaz did not mention that multiple individuals were living at the 3809 Zinnia Road residence when the search warrant was executed, nor did he mention that Dain Adams was out of town at the time of the search. (Doc. 55 at 6 ¶ 36).

On July 3, 2018, Detective Valderaz searched the Samsung DUOS cellphone and discovered two videos featuring an adult female engaging in sexually explicit conduct with one male child between the ages of four and six years old. (Doc. 1 at 6-7). The adult female was later identified as Defendant Jade Tiffany Laurezo and the male child was identified as her son. (Doc. 55 at 7 ¶ 46).

## II.  Procedural Posture

On October 17, 2018 a federal grand jury returned an indictment charging Ms. Laurezo with one count of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a),(e), and § 2256, and one count of Possession or Access with Intent to View Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), and § 2256. (Doc. 20); (Doc. 21). At her arraignment on November 6, 2018, Ms. Laurezo pled not guilty to both counts and the case was assigned to the Honorable Kenneth J. Gonzales. (Doc. 23). Shortly thereafter, on November 27, 2018, Ms. Laurezo filed the present motion to suppress the evidence extracted from her Samsung DUOS cellphone (Doc. 26).

## III.  Legal Framework

For evidence to be suppressed, the defendant must first demonstrate that her

Fourth Amendment rights have been violated. *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006). The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The United States Supreme Court has recognized that the "immense storage capacity" of cellphones implicates an individual's right to privacy and therefore falls within the ambit of Fourth Amendment protection. *Riley v. California*, 134 S.Ct. 2473, 2489-90 (2014). As such, the government must obtain a search warrant supported by probable cause before searching the contents of a cellphone, or the search must fall within a specific exception to the warrant requirement. *Id.* at 2482.

To be valid, the search warrant must: (1) be issued by a neutral magistrate judge; (2) allow the magistrate judge to find probable cause to believe that the evidence sought will "aid in a particular apprehension or conviction for a particular offense;" and (3) describe with specificity the "things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted). In determining whether to grant a search warrant, the magistrate judge must consider "under the totality of the circumstances, whether [] probable cause—defined as a 'fair probability' that contraband or other evidence will be found in a particular place—exists to conduct a search." *United States v. Biglow*, 562 F.3d 1272, 1280-81 (10th Cir. 2009) (internal citation omitted). Specifically, this requires that the affidavit supporting the search warrant demonstrate a nexus between the place to be searched and the evidence to be seized. *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). "It is not enough that the warrant makes reference to a particular offense; the warrant must

ensure [] that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) (internal citation omitted).

In addition, the Fourth Amendment protects against law enforcement officers "rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all." *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985). To be rendered constitutional, a warrant must be sufficiently specific, to "enable[] the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982)). A warrant that "describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990). In the Tenth Circuit, "warrants for computer searches must affirmatively limit the search to evidence of specific [types of] crimes or specific types of material." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).

Finally, in examining the issuing judge's decision, the reviewing court should afford their determination of probable cause "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Moreover, even if the defendant is able to establish that the search was unconstitutional, the government may demonstrate "inevitable discovery, discovery by independent means, or attenuation" to avoid suppression of the tainted evidence. *Torres-Castro*, 470 F.3d at 999.

## IV. Analysis

Ms. Laurezo first moves to suppress evidence seized from the search of the 3809 Zinnia Road residence because the search warrant was not limited to items that belonged to Dain Adams. (Doc. 55 at 12-14). Next, Ms. Laurezo contends the search warrant authorizing the search of her Samsung Duos cellphone violated the Fourth Amendment. *Id.* at 16. In particular, Ms. Laurezo argues law enforcement did not have probable cause to search her cellphone and the warrant authorizing the search was overbroad and lacking in particularity. *Id.* As a result, Ms. Laurezo argues the good-faith exception does not apply and the Government's knowing and reckless conduct entitles her to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 26 at 11-15).

In response, the Government states that the affidavit supporting the search of the 3809 Zinnia Road residence linked the home to be searched with a specific IP address that was uploading child pornography to the internet. (Doc. 33 at 7). The Government argues that this nexus is sufficient to establish probable cause to search the 3809 Zinnia Road residence. *Id.* In addition, the Government contends the search of Ms. Laurezo's Samsung DUOS cellphone was supported by probable cause, was not unconstitutionally "broader than the probable cause on which it is based," and was sufficiently particular to withstand judicial review. *Id.* at 10. Finally, the Government posits that because Detective Valderaz made no material omissions in the warrant, there was no *Franks* violation entitling Ms. Laurezo to a hearing. *Id.* at 15-16. Regardless, the Government argues, the good faith exception applies, and the evidence would have been inevitably discovered in this case by other means. *Id.* at 17-23.

### A. Probable Cause Supporting the Warrants

While the Fourth Amendment is known to "protect people, not places," a warrant may be issued to search a particular place when there is a nexus between the items sought and the place to be searched. *Katz v. United States*, 389 U.S. 347, 351 (1967); *United States v. Gillman*, 432 Fed. Appx. 513, 515 (6th Cir. 2011) (unpublished). Indeed, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Moreover, a search warrant does not need to identify all of the occupants of a residence to pass constitutional muster. *Id.* at 554 ("Search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized.").

With these principles in mind, the Court is unpersuaded by Ms. Laurezo's argument that the search warrant's failure to limit the search and seizure of electronic devices to those belonging to Dain Adams renders it unconstitutional. In the supporting affidavit for the search of the 3809 Zinnia Road residence, Detective Valderaz set forth the following facts which inform the probable cause calculus: he received a CyberTipline Report from the National Center for Missing and Exploited Children connecting Dain Adams' email address, dayton66xx@gmail.com, to uploaded files of child pornography; the child pornography files were traced back to a particular IP address listing Dain Adams as the subscriber; the IP address used for uploading the child pornography files listed 3809 Zinnia Road as the "service address;" and law enforcement observed Dain

Adams' car parked in front of the 3809 Zinnia Road residence. *See* (Doc. 26-1). The affidavit details three separate sources that corroborated Detective Valderaz's conclusion that child pornography had been uploaded from an internet account traced to the 3809 Zinnia Road residence: (1) the Pecos Valley Regional Communication Center's confirmation that Dain Adams' vehicle was parked at the residence; (2) the email address owned by Dain Adams that was reported from the National Center for Missing and Exploited Children; and (3) the IP address registry, DFN Systems / Terrestrial Communications, that confirmed Dain Adams' email address, IP address, full name, and service address. (Doc. 33-1 at 12). Based on these facts, the search warrant authorized seizure of all electronic devices located inside the 3809 Zinnia Road residence. *Id.* at 7.

The information provided in the affidavit is sufficient to lead a reasonable person to believe that evidence of child pornography would be found on the electronic devices inside the 3809 Zinnia Road residence. Indeed, Detective Valderaz thoroughly explained the trail that he followed connecting the IP address uploading child pornography to 3809 Zinnia Road. *See United States v. Chiaradio*, 684 F.3d 265, 279 (5th Cir. 2012) (holding that probable cause existed where the affidavit explained how the investigation led to the defendant's IP address and, in turn, his home). Once Detective Valderaz set forth his investigative discoveries, Ms. Laurezo's electronic items were not excused from the scope of the warrant simply because she was not the individual listed as the internet subscriber for the residence. There was probable cause to believe that *someone* in the 3809 Zinnia Road residence was uploading child pornography files, and as such, law enforcement officials could reasonably search the

9

*entire residence* for electronic devices that may have access to the internet, regardless of ownership. *See State v. Reichling*, 781 F.3d 883, 887-88 (7th Cir. 2015) ("it was or should have been common knowledge to judges (like other members of the public) that images sent via cellphones or Facebook accounts may be readily transferred to other storage devices"); *see also Gillman,* 432 Fed. Appx. at 515 (rejecting the defendant's argument that an IP address was an insufficient nexus connecting the uploading of child pornography to the defendant's home and computer).

Indeed, the probable cause nexus mandated by the Fourth Amendment is satisfied in this case by the connection between the residence that was searched and the reasonable belief that evidence of child pornography would be discovered there. The search warrant authorized a search of the location associated with the IP address, not the search of any single associated subscriber. (Doc. 33-1 at 7) ("Person and\or Describe Premises [to be searched]: 3809 Zinnia Road Roswell, NM 88203"). Thus, Ms. Laurezo's contention that law enforcement only had probable cause to believe Dain Adams was uploading child pornography is misplaced.

This conclusion comports with the nature and functionality of an IP address. Specifically, "it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific call." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012). A single IP address may be operated by multiple devices owned by any number of users. *Id.* As such, just because Dain Adams was paying the internet bill for the 3809 Zinnia Road residence, does not mean he was the only individual who

could have been uploading child pornography using the home's internet server.

The Court's conclusion is consistent with those authored by courts around the country, including the interpretation and application of case law from the Tenth Circuit Court of Appeals. For example, in *United States v. Renigar*, the Tenth Circuit opined that "in light of the information in the affidavit which linked the IP address in question to both child pornography and to the residential address, as well as the affidavit's discussion of computer technology, there was a strong suggestion that the computer which [defendant] used to access the [] network would be found at the apartment and would contain evidence associated with child pornography and/or its transmission." 613 F.3d 990, 994 (10th Cir. 2010).

Similarly, in *United States v. Vosburgh*, the Third Circuit concluded it was "fairly probable" that child pornography may be located on computer equipment found in the defendant's home where the affidavit explained that "someone using a computer with a [certain] IP address attempted to download a video that purported to be hardcore child pornography [], [and] that on the day in question, the relevant IP address was assigned to a[n] [internet] account registered to the defendant's [home]." 602 F.3d 512, 526 (3rd Cir. 2010). Indeed, courts recognize that "an association between an IP address and a physical address" is a substantial basis to conclude that evidence of criminal activity may be afoot inside an individual's residence. *See United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007).

Notably, in the present case, the affidavit did not set forth a "discussion of computer technology," purporting to inform the magistrate judge of the nexus between an IP address and the physical address. *See Renigar*, 613 F.3d at 994. However, nearly

11

a decade has passed since the Tenth Circuit's opinion in *Renigar*, and the Court's understanding of technology has developed to a point that the average person is familiar with how an IP address is traceable to a physical address. At this point, it is "common knowledge to judges (like other members of the public)" that internet activity can be traced using the subscriber's IP address. *See Reichling*, 781 F.3d at 887-88. Moreover, the issuing magistrate judge is entitled to use common sense and draw reasonable inferences to determine the probability of criminal activity from the facts presented. *See Nolan*, 119 F.3d at 1183.

In sum, the evidence presented in the affidavit, in conjunction with a common-sense understanding of the use of the internet, is sufficient to establish a fair probability that evidence of child pornography would be found in the place to be searched and on any electronic devices capable of accessing the internet found inside. Thus, the search warrant authorizing seizure of all electronic devices located inside the 3809 Zinnia Road residence and the subsequent search warrant authorizing the search of the Samsung DUOS cellphone were supported by probable cause.

### B. Overbreadth and Particularity

Next, Ms. Laurezo contends the search warrant for her Samsung DUOS cellphone was not sufficiently particular because it allowed a search of "all digital data," and used open-ended language such as "including but not limited to," to permit law enforcement's virtually limitless search of her cellphone. (Doc. 26 at 9). Similarly, Ms. Laurezo argues the search warrant for the 3809 Zinnia Road residence was overbroad because it "authorized seizure of items that are not evidence of a crime, such as software and instruction manuals, and images of unclothed or partially clothed children

that are not necessarily child pornography." (Doc. 55 at 13). In addition, Ms. Laurezo contends the search warrant for the Samsung DUOS cellphone was overbroad because there was no probable cause connecting her cellphone to suspected criminal activity. (Doc. 55 at 16). Mirroring this argument, Ms. Laurezo also alleges the search warrant authorizing the search and seizure of evidence from the 3809 Zinnia Road residence was overbroad because it did not limit the search to items that belonged only to Dain Adams. (Doc. 55 at 12-14).

     As a preliminary matter, the Court has already addressed how the probable cause nexus in this case linked uploaded child pornography files with the 3809 Zinnia Road residence, not with Dain Adams as the internet subscriber. Therefore, Ms. Laurezo's argument that the warrants are overbroad because they fail to link her cellphone to the uploading of child pornography is unavailing. Put simply, there was probable cause to seize and search *all* electronic devices capable of connecting to the internet that were found inside the 3809 Zinnia Road residence. Inherent in this conclusion is the finding that probable cause was not limited to Dain Adams and the warrant was therefore not overbroad in allowing the search and seizure of all electronic devices, including those belonging to other people. The Court will therefore turn to Ms. Laurezo's remaining contentions that both the warrant for 3809 Zinnia Road and the warrant for her Samsung DUOS cellphone were overly broad because of the language employed describing the scope of the permissible searches.

     The Court will first address Ms. Laurezo's argument that the search and seizure warrant for 3809 Zinnia Road was overbroad because it permitted law enforcement to seize items that were not "evidence of a crime, such as software and instruction

13

manuals, and images of unclothed or partially clothed children that are not necessarily child pornography." (Doc. 55 at 13). Ms. Laurezo did not raise this argument in her *Motion to Suppress. See generally* (Doc. 26). Rather, Ms. Laurezo only now presents this argument in her *Findings of Fact and Conclusions of Law*. (Doc. 55 at 12). The Government was therefore unable to address this contention in its Response, nor was it able to cross-examine witnesses or present evidence at the suppression hearing to contest this argument. The Tenth Circuit has held that when a defendant fails to raise a specific argument in a motion to suppress or at a suppression hearing, the argument is deemed to be waived. *See United States v. Burke*, 633 F.3d 984, 987-88 (10th Cir. 2011) (finding that an argument that was not raised in a motion to suppress was waived); *see also United States v. Banks*, 451 F.3d 721, 727 (10th Cir. 2006) (same). Therefore, the Court finds that Ms. Laurezo has waived this argument by not presenting it in her *Motion to Suppress* or otherwise addressing it at the suppression hearing.

Next, Ms. Laurezo contests the language used in the warrant to search her Samsung DUOS cellphone. (Doc. 26 at 9). The search warrant authorized law enforcement to forensically extract: "all digital data from the phone that details communications, to include but not limited to, call history, instant messages, emails, text messages and multi-media messages;" "any call information regarding incoming and outgoing" calls, text messages, and picture messages; "any contact or phonebook information;" any data contained on any media card or SIM cards inserted in the phone; "any images, videos, or sound recordings documenting the crime, or circumstances leading to the crime"; and "any information regarding the service provider for the cellular phone." (Doc. 26-1 at 7).

14

Ms. Laurezo's particularity argument stems from the first sentence, authorizing law enforcement to search "all digital data from the phone that details communications, to include but not limited to . . . ." Ms. Laurezo's argument seems to misconstrue the text of the warrant. Specifically, the warrant does not permit "law enforcement officers to copy and examine the entire contents of the phone." *See* (Doc. 26 at 9). Rather, the language Ms. Laurezo argues is insufficiently particular is limited to one sentence, permitting law enforcement to search "all digital data *that details communications*." (Doc. 26-1 at 7). This is not an unfettered invitation for officers to search "all digital data," as Ms. Laurezo invites the Court to conclude. Rather, the Tenth Circuit has explained that a catch-all phrase "does not taint a warrant when the language serves only to modify one or more categories in [a] list." *United States v. Dunn*, 719 Fed. Appx. 746, 749 (10th Cir. 2017); *see also Burgess*, 576 F.3d at 1091-92 (warrant was sufficiently particular when the "not limited to" language applied only to a category of drug paraphernalia); *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009) (same with respect to categories of documents and computer files).

The language employed in the warrant giving law enforcement officers discretion to review all digital data that "details communication," "including, but not limited to" text messages and instant messages, speaks to the vast array of multi-media applications an individual may use to communicate on a cellphone. Here, for example, officers discovered phone applications downloaded on the Samsung DUOS cellphone that facilitated communication but would not have been included under the warrant's permission to search through "text messages" or "instant messages." These applications included Facebook Messenger, WhatsApp, Tinder, and Viber. *See* (Doc. 50

15

at 7-8, 17-20); (Doc. 51 at 117-18, 122, 153); (Doc. 57 at 6); (Doc. 59 at 2). The list of possible methods of communication available on modern cellphones is extensive, and law enforcement is not required to list every application that may be on an individual's cellphone that has the capacity to connect to the internet or otherwise communicate with one particular person or the world at large. *See United States v. Burgess*, 576 F.3d 1078, 1093 (10th Cir. 2009) (recognizing that it is "unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods—that process must remain dynamic."); *United States v. Janus Industries*, 48 F.3d 1548, 1554 (10th Cir. 1995) ("When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching agent can only be expected to describe the generic class of items he is seeking.") (internal quotations and citation omitted)).

Further, the search of the Samsung DUOS cellphone was limited to evidence of the crime being investigated—the possession and sharing of child pornography: "all digital data from the phone that details communications," "[a]ny images, videos, or sound recordings documenting *the crime*, or the circumstances leading to *the crime*," "[a]ny information regarding the service provider for the cellular phone." (Doc. 26-1 at 7) (emphasis added). In addition, the warrant limited the seizure to information from the cellphone pertaining to the crime of sexual exploitation of children. *Id.* at ¶ 12 (requesting "a search to forensically extract the Samsung DUOS cellphone, an electronic device to assist him with his investigation *regarding the crime of Sexual Exploitation of a Child (NMSA 30-6A-3)*") (emphasis added). The warrant therefore complied with Tenth Circuit precedent. *United States v. Brooks*, 427 F.3d 1246, 1252

(10th Cir. 2005) (if when reading a warrant as a whole, it "more naturally instructs officers to search those files only for evidence *related to child pornography*" it passes constitutional muster) (emphasis in original); *see also United States v. Burke*, 633 F.3d 984 (10th Cir. 2011) (because of the nature of the charge—the sexual exploitation of children—reference to the charge was "narrow enough to meet the fourth amendment's requirement by bringing to officers' attention to the purpose of the search"); *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) ("Rather than authorizing an unfocused inspection of all of Mr. Campos's property, the warrant was directed at items relating to child pornography."); *and see United States v. Russian*, 848 F.3d 1239, 1245, n.1 (10th Cir. 2017) (recognizing that the Tenth Circuit has never required "a search methodology" for computer warrants).

### C. *Franks* Violation

Ms. Laurezo further alleges that law enforcement violated *Franks v. Delaware* in materially omitting evidence from the search warrant that the Samsung DUOS cellphone "was seized from a residence occupied by more than one person in addition to the target of the investigation, Dain Adams." (Doc. 26 at 14). To succeed on a *Franks* challenge, Ms. Laurezo must prove: "(1) by a preponderance of the evidence the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant[;] and (2) after excising such false statements and considering such material omissions[,] [the court] conclude[s] the corrected affidavit does not support a finding of probable cause." *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010) (alterations and citation omitted).

Importantly, it is the defendant who "bears the burden to demonstrate the

17

affidavit's falsity or reckless disregard for the truth." *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). The *Franks* standard in proving an affiant's mental state is a difficult burden to surmount – "allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 155-56. Once this standard is met, then the defendant must show that the "remaining content of the warrant affidavit is insufficient to support a finding of probable cause." *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004).

Ms. Laurezo does not set forth any evidence that Detective Valderaz had a reckless disregard for the truth or knowingly omitted material information in his affidavit. Rather, Ms. Laurezo's argument contending that she is entitled to a *Franks* hearing states, in its entirety:

> In this case, the affidavit in support of the search warrant for the DUOS cell phone leaves out the material information that the cell phone was seized from a residence occupied by more than one person in addition to the target of the investigation, Dain Adams. There is no evidence that Dain Adams used or possessed or had access to the cell phone.

(Doc. 26 at 14). This analysis does not explain what evidence supports a finding that Detective Valderaz's actions were deliberate or reckless. On the contrary, Detective Valderaz testified that he believed any electronic device, including the Samsung DUOS cellphone, seized at the 3809 Zinnia Road residence could have been sharing child pornography from that IP address. (Doc. 51 at 67). Detective Valderaz further testified that he found the Samsung DUOS cellphone in a room he believed belonged to Dain Adams and although he did not know who the phone belonged to, he believed Dain Adams had access to it. *Id*. at 30-31, 44. Finally, Detective Valderaz asked his supervisor, Sergeant Perham, to review the warrant prior to sending it to the district

18

attorney for further review. *Id.* at 40. Detective Valderaz's knowledge at the time he applied for the search warrant, coupled with his efforts to have the warrant reviewed by his superiors, demonstrates that his conduct was not deliberate or reckless. *See Corral-Corral*, 899 F.2d at 933. As such, Ms. Laurezo is not entitled to a hearing under *Franks v. Delaware*.

**V.     Recommended Disposition**

In sum, the Court finds that the warrants to search 3809 Zinnia Road and the Samsung Duos cellphone were both supported by probable cause and were not overly broad. Because the Court finds there is no Fourth Amendment violation, it will not address Ms. Laurezo's argument that the good-faith exception should not apply. For the reasons stated above, the Court **RECOMMENDS** that Defendant Jade Tiffany Laurezo's *Motion to Suppress Evidence*, (Doc. 26), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE